NS:FTB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PERSON KNOWN AND
DESCRIBED AS ISAIAH
WILLIAMS, DATE OF BIRTH

- - - - - - - - - - - - - - - - X

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
A SEARCH WARRANT

(Fed. R. Crim. P. 41)

16M515

EASTERN DISTRICT OF NEW YORK, SS:

JASON T. ALLISON, being duly sworn, deposes and states that he is a Task Force Officer with the Joint Robbery Task Force of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 1951(a) and 924(c)(1)(A)(ii) – specifically, that on or about November 2, 2016, ISAIAH WILLIAMS, date of birth ▮▮▮▮▮ did knowingly and intentionally obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: armed robbery of United States currency from employees of a delicatessen in Staten Island, New York – will be obtained by the taking, and preserving as evidence, of a buccal swab sample or blood sample of WILLIAMS.[1]

---

[1] Some of the courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See United States v. Nicolosi, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see United States v. Owens, 2006 WL 3725547, at *6-

The source for your deponent's information and the grounds for his belief are as follows:[2]

1. I am a Task Force Officer with the Joint Robbery Task Force of the ATF and have served in that capacity for approximately four years; and I have been an officer with the New York City Police Department ("NYPD") for approximately twenty years. The facts set forth in this affidavit are based upon my own investigation of the facts and upon what I have learned from other individuals who have participated in the investigation. Additionally, statements attributable to individuals herein are set forth in sum, substance, and in part.

2. Since the summer of 2016, I have been involved in an investigation of multiple robberies that took place in Staten Island, New York. One of the robberies included in the investigation took place on November 2, 2016. In the evening on that date, two male individuals entered a delicatessen on Staten Island. One of the individuals was wearing a pink mask and was holding a gun. The other individual stood by the door and appeared to act as a lookout. The individual with the gun went behind the counter and showed the gun to an employee, who then opened the drawers of a cash register and a New York Lottery cash register. The individual with the gun then proceeded to remove cash from both registers before jumping over the counter and running out of the

---

17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

[2] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, I have not set forth all of the facts and circumstances relevant to this investigation.

2

delicatessen with the other individual, who had stood near the door. Security cameras inside the delicatessen captured the incident on video, and I have reviewed the video footage of the robbery.

3. After leaving the delicatessen, the two individuals entered a waiting taxi cab, which proceeded to drive away. After traveling a short distance, the driver of the taxi cab stopped when he saw police cars approaching. At that point, one of the individuals in the cab opened the door and ran out. After a brief canvass of the area and foot chase, this individual was apprehended hiding under a trailer and was later identified as PATRICK WEAH. The other individual who remained in the taxi cab was also apprehended and later identified as ISAIAH WILLIAMS. WILLIAMS was subsequently taken to an ATF facility in Brooklyn, where he was read his Miranda rights, which rights he waived, and agreed to speak with law enforcement officials. During the course of the interview, WILLIAMS admitted, in sum and substance, that he had participated in the robbery of the delicatessen as the person who had stood near the door (i.e., the lookout).

4. NYPD officers subsequently obtained consent to search the taxi cab. They recovered from the taxi cab a pair of gloves and a pink mask that appeared from the video footage to be the same mask worn by the individual with the gun during the robbery. The officers also recovered a black ski mask that appeared from the video footage to have been worn by the other individual who participated in the robbery. The gloves and the masks (the pink mask and the black ski mask) were submitted to the Office of the Chief Medical Examiner for New York City ("OCME") for DNA testing. Also submitted to the OCME was an abandonment sample taken from a bottle from which ISAIAH WILLIAMS had drunk during the interview described above. The OCME

3

produced a lab report concluding that a DNA profile for WILLIAMS had been created from the abandonment sample. The report went on to conclude that a comparison of that DNA profile to DNA obtained from the gloves and the masks recovered in the taxi cab produced the following results: WILLIAMS was "included" as a contributor to a mixture of DNA from a scraping taken from the black ski mask, as well as scrapings taken from each of the two gloves. The report found that WILLIAMS could not be "included" or "excluded" as a contributor to DNA taken from a swab of the pink mask. The report concluded that "[f]urther analysis could be done upon submission of an oral swab from the suspect."[3]

5. Accordingly, the government seeks to compare the DNA found on the masks and the gloves with a new DNA sample obtained directly from ISAIAH WILLIAMS.

6. Based on the above information, there is probable cause to believe that ISAIAH WILLIAMS is a contributor to DNA found on the ski mask and the gloves described above. Therefore, there is probable cause to believe that a buccal swab or sample of WILLIAMS's blood would constitute evidence of his commission of the charged crimes.

WHEREFORE, your deponent requests that a search warrant be issued authorizing ATF Special Agents, NYPD officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from ISAIAH WILLIAMS a buccal swab sample or sample of blood. An appropriately trained law

---

[3] ISAIAH WILLIAMS and PATRICK WEAH, were indicted by a grand jury sitting in the Eastern District of New York on June 23, 2017 for violations of 18 U.S.C. § 1951(a) (Hobbs Act robbery conspiracy and substantive Hobbs Act robbery) and 18 U.S.C. § 924(c) (brandishing a firearm during and in relation to a crime of violence). See 17-CR-334 (NGG). A trial date of July 9, 2018 has been set.

4

enforcement officer, or an appropriately trained designee, will perform the cheek swabbing. The DNA samples sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds. Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis. A blood sample will only be sought in the event that ISAIAH WILLIAMS refuses to submit to a buccal cheek swab. In the event that a blood sample is taken, a licensed doctor or nurse or other qualified medical practitioner will take the sample.

_____
Jason T. Allison
Task Force Officer
Joint Robbery Task Force of the ATF

Sworn to before me this
__7__ day of June, 2018

_____
THE HONORA[BLE]
UNITED STAT[ES]
EASTERN DIS[TRICT]

5